Judge Underwood

delivered the following dissent from the opinion of the Court.

In this case 1 think the circuit court correctly' sustained the demurrer to the plaintiff’s declaration. According to the contract between the parties, if 3urton did not repay the borrowed money on or before the 20th of February, the negro girl because *326 “the absolute property of Hart, and Burton bound himself to give Hart a bill of sale at any time afterwards, when called on.” The negro died in April in the possession of Hart, to whom she was delivered as a pawn in the first instance, and now he wants to throw the loss on Burton, contrary to the express stipulation in the contract, that the negro was absolutely his from-and after the 20th of February. He does not pretend, in his declaration, that he called on Burton for a bill of sale, and that he refused to execute it. !t does not appear, therefoie, that Burton has violated his contract in any respect, unless it can be shown that it was his duty, contrary to the express provisions of his contract, to return the money which he had received; in other words, to pay for a slave which died tiie property of Hart. Why shall he lie made to pay in direct opposition to the contract? No reason can he assigned for it, unless it be, that the contract should be regarded as a mortgage, to which an equity of redemption was attached in favour of Burton, and which would enable him to redeem, at any time, notwithstanding his express covenant, that the slave should be the absolute property .of Hart, and that he would confirm the title by bill of sale if required, in case he did not pay the money on the 20th of February. It is not possible that tiie parties could have shown more clearly than they have done, an intention on the part of Burton, to make his pawn irredeemable, in case be did not pay the money on the day. Burton is not asserting any right to redeem, and it is not necessary to decide, whether he would be estopped by the terms of his deed, to assert such a right. However that may be, I am clear Hart has no right to claim a return of the money that advanced. He stipulated to take an absolute title to the slave, unless the money was paid him on a named day. He did get such a title by the terms of the contract. If he feared it was not sufficient, it was his duty to call on Burton for a confirmation of it, He failed to do this, waited till the slave died, and now wishes to evade so much of the contract as gave Burton the right to confirm his title, if any confirmation was necessary.
Dissent.
Dissent.
The equitable right to redeem pawned or mortgaged property, contrary to the stipulations of the contract, is an innovation by the chancellor, upon the doctrines of the common law. It was designed to prevent the hardships and oppressions which usurers and money lenders were in the habit of inflicting upon those whose needy circumstances required the use of money. Now, I think the reasons upon which this whole doctrine is founded, show that Hart has no right to avail himself of the doctrine in this case. If he lent $275 and took possession of the slave as a pawn to secure its return, and the services of the slave were worth more than the interest of the money, he was guilty of violating the law, as a usurer. That the services of the slave were at least equal to the interest, and that the one was to be set off against the other, I infer from the fact, that there is no stipulation to pay interest in the contract. That the slave was equal in value to the sum advanced, I infer from the fact, that Hart accepted her as ample security, and showed an anxiety by the terms of his bargain, to make his title absolute. I, therefore, say to Hart, the doctrine of redemption does not apply in your behalf. The object of that doctrine is to shield^the necessitous from oppression, and it shall not be perverted to enable yon to throw a dead negro, contrary to your contract, upon the hands of the borrower of your money; when if the negro had lived, you would have used the contract to prevent a redemption, and would have reproached Burton with meanness, if be had failed to execute the bill of sale upon request. The doctrine of redemption shall not be a sword in your hands. I would, therefore, in all cases like this, hold the lender to his bargain. There is no usury or oppression operating upon him, which would justify the chancellor’s interposition in order to restrict the rigour of the common law rule; much less can I perceive any principle of the common law, which can justify a recovery, in an action at law, directly in the.face of the contract, and in contravention of it. Here the parties have agreed, on a certain event, that the money shall be Burton’s and thesjave Hart’s absolute property.' Yet by the opin *328 ion overruling the demurrer, the common law judge is made to decide, that Burton shall not have I he money, nor shall the slave be Hart’s absolute property; thus setting aside tlie contract made between the parties, and substituting by implication, a new contract in opposition to it.
Dissent.
The contracts of men should be respected and enforced in courts of justice, according to the intention of the contracting parties, unless they be malum in sb, malum prohibitum, or contrary to some settled principle of public policy. Now I cannot perceive any thing in the contract between Hart and Burton positively vicious, nor am [.acquainted with any principle of law which prohibits the making of such a contract. There is a principle of policy, I admit, which has secured to mortgagors and pawners the right to redeem, and in the ordinary cases of mortgages and pawns, I grant, that there should be reciprocity in the rule; and whenever in such cares, the mortgagor or pledger could redeem, the mortgagee or pledgee should have his money, notwithstanding the destruction of the thing mortgaged or pledged. In such cases as these, the mortgage or pledge is no more than a security for the money lent. But in the present case it is perfectly obvious that the parties intended something more than a mere security. They intended a sale, upon condition the money was not paid on the day. Is it true then, that once a pawn, always a pawn; once a mortgage, alwas a mortgage? Shall the. plaintiff, Hart, avail himself of any such maxim,' to change the character of the contract from what it so obviously is, and thereby convert an absolute into a redeemable estate? So far as considerations, drawn from public policy can influence the case, (and it should be re me tribe red that such considerations, gave rise to the right to redeem,) I am satisfied they are all against Hart, and Í do not admit that the maxims alluded to are applicable in his behalf. In Bacons Abridgement, Title mortgage, letter B., many cases are stated, where, if the money is riot paid within a time limited, the estate becomes absolute, and' I observe in some of the cases the grantor stipulated against his right in equity to redeem the premises in *329 case he failed to pay on the day. I do not see it noticed bv the coart, and such stipulation declared illegal or inoperative. I moreover notice in cases, that the want of a covenant on the part of the mortgagor, binding himself to repay thepnoney advanced, is a strong circumstance to prevent him from asserting a right to redeem where he fails to pay the money on the day. Now the opinion has deduced a covenant to pay, in this case, from the acknowledgement by Burton, that he “borrowed” the money. If there was. nothing upon the face of the contract incompatible with the deductions made in the opinion, I am not prepared'to say that, these deductions would be objectionable in an ordinary case of borrowing money, and the execution of an instrument merely acknowledging that fact. But when, as here, the covenant is to execute a bill of sale upon request, confirming the title, in case the money is mot paid within the limited time, it does seem to me that the idea of an obligation or covenant to return the money is completely negatived. It is excluded by the stipulation to do an act incompatible with it; and yet my brethren have made Burton covenant to repay the money.
Dissent
I therefore look upon this case as falling within the principles recognized in Floyer vs. Levingston 1 P. Williams 268, Miller vs. Less, 2 Atk. 494, Tasbury and McNamara vs. Ecklin &c. 4 Brown’s Pari. Ca. 142, in all of which the right of the mortgagee to pay a consideration for and to stipulate against the assertion of an equity of redemption, was recognized. In those cases lapse of time constituted a consideration hostile to permitting redemptions. I cite them to show that there is nothing illegal in contracting to surrender the right to redeem real estate much less is there any thing objectionable in such a contract in relation to a chattel.
In Jacob’s law dictionary, title Power, it is shown that there are cases where the pawn cannot be redeemed. Strange, 919, is cited for this principle “where money is lent on a pledge, the borrower is personally liable to the payment, unless there be an agreement to the contrary.” Such agreement ex *330 jsts in this case, according to iny in d r larding of transaction, and therefore Burton is not peisorr? ally liable, as the opinion decides.